**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI**


CRIS CHRISTENSON,          )
          )
          )
    **Plaintiff,**        )
          )
    **vs.**            )      Case No.
          )
**CITY OF JOPLIN, MISSOURI**    )
Serve:             )
Barbara Hogelin, City Clerk      )
Joplin City Hall           )
602 S. Main St.          )
Joplin, Missouri  64801        )
          )
**CORPORAL SHAWN DODSON**    )
Serve at:           )
Joplin Police Department, Joplin City Hall   )
303 E. 3rd St.           )
Joplin, Missouri  64801        )
          )
**OFFICER STEVEN FEKEN**     )
Serve at:           )
Joplin Police Department, Joplin City Hall   )
303 E. 3rd St.           )
Joplin, Missouri  64801         )
          )
**OFFICER JOHN WATKINS**     )
Serve at:           )
Joplin Police Department, Joplin City Hall   )
303 E. 3rd St.           )
Joplin, Missouri  64801         )
          )
**FREEMAN HEALTH SYSTEM**    )
Serve at:           )
Registered Agent         )
Paula Baker           )
1102 W. 32nd St.         )
Joplin, Missouri, 65804        )
          )
**ANDY BRANNAN**        )
Serve at:           )
932 E. 34th St.          )

**Joplin, MO, 64804**                                    )
                                                         )
**Defendants.**                                          )


## COMPLAINT

**COMES NOW** Plaintiff, by and through his attorneys of record, Baird, Lightner, Millsap & Harpool, and for his causes of action against Defendants, states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff, Cris Christenson, is a citizen of the United States of America, and a resident of Miami County, Kansas.

2.      Defendant City of Joplin, Missouri, (hereinafter "Defendant Joplin") is a municipality organized under the laws of the State of Missouri.

3.      Defendant Corporal Shawn Dodson (hereinafter "Defendant Dodson") was, at all times relevant, a police officer for the Joplin Police Department and was an employee of the City of Joplin. Defendant Dodson is being sued in his individual and official capacities.

4.      Defendant Officer Steven Feken (hereinafter "Defendant Feken") was, at all times relevant, a police officer for the Joplin Police Department and was an employee of the City of Joplin, Missouri.  Defendant Feken is being sued in his individual and official capacities.

5.      Defendant Officer John Watkins (hereinafter "Defendant Watkins") was, at all times relevant, a police officer for the Joplin Police Department and was an employee of the City of Joplin, Missouri.  Defendant Watkins is being sued in his individual and official capacities.

6.      Defendant Freeman Health System (hereinafter "Defendant Hospital") is a Missouri non-profit corporation organized and existing under the laws of the State of Missouri.

7. Defendant Andy Brannan, R.N. (hereinafter "Defendant Brannan") was, at all times relevant, the Mental Health Coordinator for Freeman Health Systems and was an employee of Freeman Health Systems. Upon information and belief, he is a resident of Barton County, Missouri. Defendant Brannan is being sued in his individual capacity.

8. Jurisdiction and venue are proper in this Court.

## GENERAL AVERMENTS COMMON TO ALL C LAIMS

9. Plaintiff arrived in Joplin, Missouri on June 5, 2012 for the purpose of attending a business meeting the following day.

10. Plaintiff had separated from his wife and moved out of the marital home approximately two weeks prior to June 5, 2012.

11. Earlier in the day on June 5, 2012, and before Plaintiff's arrival in Joplin, Plaintiff had a phone conversation with his estranged wife in which Plaintiff and his estranged wife had a disagreement, and after which, Plaintiff's estranged wife became angry with him.

12. Following the conversation with his estranged wife, Plaintiff set out from Johnson County, Kansas, to Joplin, Missouri, for the purpose of attending his business meeting the following day.

13. Upon his arrival in Joplin, Plaintiff checked into a hotel room at the Hampton Inn Hotel located at 3107 E. 36th St., Joplin, Missouri.

14. After checking into his hotel room, Plaintiff went across the street to the Outback Steakhouse Restaurant to pick up dinner for himself.

15. Plaintiff ordered his dinner to go and returned to his hotel room to eat.

16. Upon returning to his hotel room at the Hampton Inn, Plaintiff had another short phone conversation with his estranged wife.

17.     During this phone conversation, Plaintiff and his estranged wife had another argument and Plaintiff's estranged wife became angry with him again.

18.     Plaintiff got off the phone with his estranged wife and began eating his dinner and watching television.

19.     Approximately thirty minutes later, Plaintiff received a knock on his hotel room door.

20.     Plaintiff got up and looked through the peep hole in the door, but found that the peep hole was being covered from the outside.

21.     Plaintiff opened the door a crack to see who was outside.

22.     Before Plaintiff could determine who was outside his door, it was was pushed open upon him. Plaintiff was knocked backward, and Defendants Feken and Watkins, accompanied by two other officers, forced their way into Plaintiff's hotel room.

23.     Defendants Feken and Watkins, and the other police officers, neither sought nor received permission to enter Plaintiff's hotel room.

24.     After forcing their way into Plaintiff's hotel room, Defendants Feken and Watkins informed him that his wife had telephoned the front desk of the Hampton Inn and stated that Plaintiff was in a suicidal state.

25.     Upon information and belief, after receiving the call from Plaintiff's estranged wife, the front desk clerk at the Hampton Inn placed a 911 phone call to report that Plaintiff might be suicidal.

26.     Upon information and belief, Defendants Feken and Watkins had been dispatched to the Hampton Inn in response to the call from the front desk clerk.

27.     Upon arriving at the Hampton Inn, Officer Watkins made contact with the front desk clerk who gave him Plaintiff's estranged wife's telephone number.

28.     Defendant Watkins telephoned Plaintiff's estranged wife, and upon information and belief, claims that he was informed by Plaintiff's estranged wife that she had spoken to Plaintiff on the phone earlier and that Plaintiff had informed her that he was suicidal, was drinking alcohol, and had ingested prescription pills.

29.     Plaintiff never told his estranged wife that he was suicidal, never told her that he had been drinking alcohol, and never told her that he had taken prescription pills.

30.     When confronted by Defendants Watkins and Feken about the allegations from his estranged wife, Plaintiff attempted to explain to them that he and his wife had recently separated, that his wife had made the report because she was angry at him, that he was not suicidal, and had not ingested alcohol or prescription pills.

31.     Throughout Plaintiff's interaction with Defendants Watkins and Feken, there were no pills or alcohol visible in his hotel room.

32.     Officers Feken and Watkins informed Plaintiff that they were going to search his room.

33.     Plaintiff sat on the bed in his hotel room and ate the dessert left over from his dinner while Officers Feken and Watkins searched his hotel room.

34.     Defendants Feken and Watkins also searched Plaintiff's bags for alcohol, pills or other evidence that Plaintiff was a danger to himself.

35.     Plaintiff never gave Defendants Feken or Watkins permission to search his hotel room or his bags.

36. Throughout the time that Officers Feken and Watkins were in his hotel room, Plaintiff repeatedly told them that he was not a danger to himself and asked them to leave his hotel room.

37. Despite Plaintiff's repeated requests for them to leave, Officers Feken and Watkins refused to leave Plaintiff's hotel room.

38. Defendants Feken and Watkins became angry with Plaintiff upon Plaintiff's repeated requests that they leave his hotel room.

39. Despite having conducted a complete search of Plaintiff's bags and hotel room without his permission, and despite having not discovered any evidence of drugs, alcohol or any other evidence that Plaintiff was suicidal, Defendants Watkins and Feken informed Plaintiff that he was going to be placed under arrest.

40. Plaintiff again attempted to explain to Defendants Watkins and Feken that a mistake was being made. However, Defendants Watkins and Feken informed Plaintiff to place his hands behind his back or that he would be tasered.

41. Plaintiff again attempted to explain that Defendants Watkins and Faken were making a mistake. However, even though Plaintiff did not physically threaten the officers and was not a danger to them, Defendants Watkins and Feken deployed a taser against Plaintiff.

42. The shock from the taser knocked Plaintiff backwards onto the bed.

43. Although Plaintiff had been knocked onto his back, Defendants Watkins and Feken yelled at him to place his hands behind his back even though it was not physically possible for him to do so given Plaintiff's position on his back.

44.     Plaintiff attempted to comply with Defendants Feken and Watkins' orders to place his hands behind his back while trying to explain to them that he had dislocated shoulders and that it was difficult for him to do so.

45.     Despite Plaintiff's attempt at compliance, Defendants Feken and Watkins repeatedly deployed the taser even though Plaintiff was on his back on the bed and was attempting to place his hands behind his back.

46.     The use of the taser knocked Plaintiff off the bed onto the floor while he continued to attempt compliance with Defendants Feken and Watkin's orders to place his hands behind his back.

47.     Defendants Feken and Watkins finally quit tasing Plaintiff and Plaintiff was able, with great difficulty, to place his hands behind his back.

48.     Defendants Feken and Watkins placed handcuffs on Plaintiff and forced him to sit on the ground.

49.     Plaintiff informed Defendants Feken and Watkins that the electrical current had caused him to have to use the restroom and that if he was not allowed to use the restroom he would be forced to defecate in his pants.

50.     Defendants Feken and Watkins refused to allow Plaintiff to use the restroom and Plaintiff was forced to defecate in his pants.

51.     Officers Feken and Watkins refused to allow Plaintiff to clean himself up and forced him to sit on the ground in his own mess.

52.     While Plaintiff was detained in handcuffs on the ground, Defendant Corporal Dodson arrived at the scene.

53.     Defendant Corporal Dodson ordered Officers Feken and Watkins to release Plaintiff from the handcuffs, and to allow him to take a shower and change his clothes.

54.     Plaintiff was allowed to enter the restroom by himself and to take a shower and put on a clean pair of clothes.

55.     Despite at no point having observed suicidal behavior from Plaintiff, and despite having never observed any drugs or alcohol in his room to corroborate Plaintiff's estranged wife's story, Defendants Watkins, Feken, and Dodson determined to arrest Plaintiff and take him to the hospital for a 96 hour mental health hold.

56.     Defendants Watkins and Feken had, in fact, determined that Plaintiff would be arrested and taken in for a 96 hour hold based solely on Defendant Watkins' conversation with Plaintiff's estranged wife and before arriving at Plaintiff's hotel room and making independent observations about Plaintiff's mental state.

57.     Plaintiff was again placed in handcuffs and was taken to a patrol car for transport to the hospital

58.     Officer Watkins, although he was fully aware that there was no independent evidence to indicate that Plaintiff was in a suicidal condition, transported Plaintiff to Freeman Hospital in Joplin, Missouri, to have him committed for a 96 hour mental health hold.

59.     Upon arriving at Defendant Hospital, Defendant Watkins conferred with employees of Defendant hospital.

60.     Defendant Watkins informed the employees of Defendant Hosptial that he had not found any alcohol, pills or other evidence that Plaintiff was a danger to himself, but that Plaintiff had been charged with resisting arrest.

61.     Although the employees of Defendant Hospital were aware that there was absolutely no evidence that Plaintiff was a danger to himself or others, and although the employees of Defendant Hospital did not examine Plaintiff or make any personal observations regarding his mental state, the employees of Defendant Hospital conspired with Officer Watkins to violate Plaintiff's constitutional rights by having him committed into a mental health institution without any medical reason for doing so.

62.     Despite not having any independent evidence that Plaintiff was a danger to himself or others, the employees of Defendant Hospital admitted Plaintiff into the hospital and committed him for a 96 hour mental health hold.

63.     Upon committing Plaintiff into the hospital, the employees of Defendant Hospital were aware that Plaintiff would be charged medical and hospital fees for the time that he was involuntarily committed into the hospital.

64.     Upon being committed into to Defendant Hospital, Plaintiff repeatedly requested that he be evaluated by a licensed mental health professional and that he be allowed to speak to an attorney.

65.     Despite requests, Plaintiff was not initially allowed to speak to an attorney or a licensed mental health professional.

66.     After approximately 6 hours of being held in Defendant Hospital's emergency room, Plaintiff was informed that if he agreed to be transferred to Defendant Hospital's Mental Health Unit, he would be immediately evaluated by a licensed mental health professional and released.

67.     Plaintiff agreed to be transferred to Defendant Hospital's Mental Health Unit upon the promise that he would immediately be evaluated by a licensed mental health professional and released.

68.     Upon his arrival at Defendant Hospital's Mental Health Unit, Plaintiff was not immediately evaluated by a licensed mental health professional as promised, but was held in the Mental Health Unit against his will for approximately 30 hours before receiving a full evaluation by a licensed mental health professional.

69.     While he was being held against his will in Defendant Hospital's Mental Health Unit, Plaintiff was continually coerced by Defendant Hospital's employees into taking medications without any explanation as to what the medications were or what their intended effects were to be.

70.     Plaintiff was told that if he did not take the medications being forced upon him, it would be noted that he was being uncooperative and his hold in the mental health unit would be lengthened.

71.     Plaintiff repeatedly told every staff member at Defendant Hospital with whom he interacted that he was not a danger to himself and that his commitment in the hospital was a mistake.

72.     Defendant repeatedly told every staff member of Defendant Hospital with whom he interacted that he wished to be released from the hospital.

73.     Despite Plaintiff's repeated pleas, Plaintiff was held against his will in Defendant Hospital's Mental Health Unit for approximately 30 hours before a full mental health evaluation was conducted by a licensed mental health professional.

74.     Upon a complete evaluation by a licensed mental health professional, it was determined that Plaintiff was not a danger to himself, as he had been stating the entire time during his commitment.

75.     Upon his evaluation by a licensed mental health professional, Plaintiff was finally released from Defendant Hospital, after being held against his will for approximately 36 hours.

76.     After Plaintiff was admitted into Defendant Hospital, Defendant Brannan, the Mental Health Coordinator for Defendant Hospital filed a Notice and Application for the Admission of an Involuntary Patient with the probate court of Newton County, Missouri.

77.     Defendant Brannan did not personally examine or observe Plaintiff, or conduct an independent investigation into his mental state, before filing the Application, but relied solely upon the account given by Defendant Watkins.

78.     Upon information and belief, Defendant Joplin had received numerous past complaints regarding unlawful entries into dwellings, unlawful searches, unlawful detainments and arrests and unlawful uses of force perpetuated by its police officer employees, but has not taken steps to investigate or address these complaints.

### COUNT I--- VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANTS WATKINS AND FEKEN FOR THEIR VIOLATION OF PLAINTIFF'S RIGHTS CONTAINED IN THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

79.     Plaintiff incorporates each and every allegation contained in paragraphs 1-78 above as if specifically set forth herein.

80.     Defendants Feken and Watkins were police officers employed by the City of Joplin, and during all relevant times acted under color of state law.

81.     Defendants Feken and Watkins deprived Plaintiff of his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from

unreasonable search and seizure when they committed each of the following acts without a warrant and without probable cause:

        a.     Forcing their way into Plaintiff's hotel room without his permission and without probable cause;

        b.     Searching Plaintiff's hotel room and bags without his permission and without probable cause;

        c.     Failing to leave Plaintiff's hotel room despite their failure to find any independent evidence that he was a danger to himself or others and despite Plaintiff's repeated requests that they leave;

        d.     Deciding to detain and arrest Plaintiff without probable cause despite not having found any independent evidence demonstrating that Plaintiff was a danger to himself or others.

82. Defendants Feken and Watkins actions in depriving Plaintiff of his Constitutional rights as described in paragraph 81, were intentional, willful, wanton, and displayed a deliberate, reckless and callous indifference to Plaintiff's federally protected rights such that Plaintiff is entitled to an award of punitive damages.

83. Plaintiff's Fourth Amendment rights, the violation of which are described in paragraph 81 above, were clearly established at all relevant times.

84. Defendants Feken and Watkins were aware of Plaintiff's rights, the violation of which are described in paragraph 81 above, and acted with deliberate indifference to Plaintiff's rights by violating them.

85. As a direct and proximate result of Defendant's Feken and Watkins' violation of Plaintiff's known Constitutional rights, Plaintiff suffered damages in the following ways, including, but not limited to:

  a. Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

  b. Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

  c. Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

86. Plaintiff is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, based on the foregoing, as to Count I of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendants Feken and Watkins for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, together with reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**COUNT II---VIOLATION OF 42 U.S.C § 1983 BY DEFENDANTS FEKEN AND WATKINS FOR THEIR VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHT TO BE FREE FROM THE UNLAWFUL AND EXCESSIVE USE OF FORCE**

87. Plaintiff incorporates each and every allegation contained in paragraphs 1-86 above as if specifically set forth herein.

88.     Defendants Feken and Watkins were police officers employed by the City of Joplin, and during all relevant times, acted under color of state law.

89.     Defendants Feken and Watkins deprived Plaintiff of his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure when they committed each of the following acts:

> a.     Deploying a taser against him when he did not physically resist arrest or physically threaten the Defendants;
>
> b.     Continuing to deploy a taser against Plaintiff after he had been incapacitated and after he attempted to comply with Defendants' orders.

90.     Defendants Feken and Watkins actions in depriving Plaintiff of his Fourth Amendment Right to be free from Defendant's unreasonable and excessive use of force was willful, wanton, and displayed a deliberate, reckless and callous indifference to Plaintiff's federally protected rights such that Plaintiff is entitled to an award of punitive damages.

91.     Plaintiff's Fourth Amendment right to be free from unreasonable and excessive use of force were clearly established at all relevant times.

92.     Defendants Feken and Watkins were aware of Plaintiff's Fourth Amendment rights to be free from unreasonable and excessive force and acted with deliberate indifference to Plaintiff's rights by violating them.

93.     As a direct and proximate result of Defendant's Feken and Watkins' violation of Plaintiff's known Constitutional rights, Plaintiff suffered damages in the following ways, including, but not limited to:

     a.     Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

     b.     Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

     c.     Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

94.     Plaintiff is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, based on the foregoing, as to Count II of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendants Feken and Watkins for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, together with reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT III--- VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANT DODSON FOR HIS VIOLATION OF PLAINTIFF'S RIGHTS CONTAINED IN THE FOURTH AND FOURTEENTH AMENDMENTS TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

95.     Plaintiff incorporates each and every allegation contained in paragraphs 1-94 above as if specifically set forth herein.

96.     Defendant Dodson was a police officer employed by the City of Joplin, and during all relevant times acted under color of state law.

97.     Defendant Dodson was the senior most officer on the scene at the time of Plaintiff's unlawful arrest.

98.     Defendant Dodson deprived Plaintiff of his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure by approving and participating in Plaintiff's detainment and arrest that took place without a warrant, probable cause and without any independent evidence demonstrating that Plaintiff was a danger to himself or others.

99.     Defendant Dodson's actions in depriving Plaintiff of his Constitutional rights were intentional, willful, wanton, and displayed a deliberate, reckless and callous indifference to Plaintiff's federally protected rights such that Plaintiff is entitled to an award of punitive damages.

100.    Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures was clearly established at all relevant times.

101.    Defendant Dodson was aware of Plaintiff's right to be free from unreasonable search and seizure and acted with deliberate indifference to Plaintiff's rights by violating his rights.

102.    As a direct and proximate result of Defendant Dodson's violation of Plaintiff's known Constitutional rights, Plaintiff suffered damages in the following ways, including, but not limited to:

        a.     Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

b.    Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

c.    Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

103.    Plaintiff is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, based on the foregoing, as to Count III of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Dodson for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendant and deter others from similar conduct, together with reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT IV--- VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANT CITY OF JOPLIN FOR ITS DENIAL OF PLAINTIFF'S RIGHTS CONTAINED IN THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION—POLICY AND CUSTOM OF VIOLATING CITIZENS RIGHTS TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE

104.    Plaintiff incorporates each and every allegation contained in paragraphs 1-103 above as if specifically set forth herein.

105.    When Defendants Feken, Watkins, and Dodson violated Plaintiff's rights under the Fourth Amendment, as described above, they acted pursuant to a policy or persistent pattern and custom of unconstitutional misconduct perpetuated by and within the Defendant Joplin's police department that included the ongoing deliberate violation of Constitutional rights perpetuated by police officers, including the unlawful and unreasonable entry into dwellings, the

unlawful and unreasonable search of dwellings and personal property, the unlawful detainment and arrest of citizens without a warrant or probable cause, and the unreasonable and unlawful use of force against detainees.

106.    Said customs, described above, were so widespread as to represent the actual policy of Defendant Joplin.

107.    By failing to take adequate steps to correct such unconstitutional behavior after it had become known, policymaking officials of the Defendant Joplin's police department and members of the Joplin City Council either acted with deliberate indifference toward or tacit authorization of the custom of unconstitutional misconduct perpetuated by its police officer employees.

108.    Defendant Joplin's custom of allowing police officers to persistently violate Constitutional rights, as described above, was the proximate cause of constitutional deprivations committed against Plaintiff.

109.    Defendant Joplin's custom of allowing police officers to persistently violate Constitutional rights, as described above, was the moving force behind the constitutional deprivations committed against Plaintiff. and, as a whole, Defendant Joplin's actions and omissions shock the conscience.

110.    As a direct and proximate result of Defendant Joplin's custom of allowing police officers to persistently violate Constitutional rights, as described above, Plaintiff suffered damages in the following ways, including but not limited to:

a.    Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

b. Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

c. Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

111. Plaintiff is entitled to an award of attorneys fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, based on the foregoing, as to Count IV of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Joplin for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, together with reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V--- VIOLATION OF 42 U.S.C. § 1983 BY DEFENDANT CITY OF JOPLIN, MISSOURI FOR ITS DENIAL OF PLAINTIFF'S RIGHTS CONTAINED IN THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION—FAILURE TO TRAIN EMPLOYEES

112. Plaintiff incorporates each and every allegation contained in paragraphs 1-111 above as if specifically set forth herein.

113. Defendant Joplin, through its police officer employees, who were acting under color of state law, deprived Plaintiff of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

114. Defendant Joplin either failed to create a policy, or failed to ensure that its police officer employees were trained, educated and informed about its policies, concerning the proper, reasonable and lawful entry into residences, concerning the proper, reasonable and lawful searches and seizures of residences and personal property, concerning the proper, reasonable,

and lawful arrest and detainment of citizens, and concerning the proper, reasonable and lawful use of force against detainees, and therefore, failed to train its police officer employees how not to violate citizens' rights in the aforementioned situations.

115.    In the context of continual and ongoing policing of territory within the City of Joplin, the failure to train police officer employees concerning the areas described above is an omission that is so likely to result in a violation of a citizen's Constitutional rights that the need for training in these areas is patently obvious.

116.    The failure to train police officer employees about the proper, reasonable and lawful entry into residences, concerning the proper, reasonable and lawful searches of residences and personal property, concerning the proper, reasonable, and lawful arrest and detainment of citizens, and concerning the proper, reasonable and lawful use of force against detainees, is a failure of Defendant Joplin in its responsibility to train employees to handle recurring situations presenting an obvious potential for such Constitutional violations to occur.

117.    Prior acts of unreasonable and unlawful entry into residences, unreasonable and unlawful searches of residences and personal property, unreasonable and unlawful arrests and detainments of citizens, and unreasonable and unlawful use of force against detainees represents a pattern of constitutional violations committed by City of Joplin police officers that did or should have put Defendant Joplin on notice that further training was required of its police officer employees in the areas described above.

118.    Defendant Joplin's failure to train its police officer employees in the areas described above reflects a deliberate indifference to the constitutional rights of Plaintiff and other citizens, such that its failure to train its police officer employees actually represents Defendant Joplin's policy.

119.     Defendant Joplin's policy of failing to train its employees, as described above, was the direct and proximate cause of the constitutional deprivations committed against Plaintiff.

120.     Defendant Joplin's policy of failing to train its employees, as described above, was the moving force behind the constitutional deprivations committed against Plaintiff and, as a whole, Defendant Joplin's actions and omissions shock the conscience.

121.     As a direct and proximate result of Defendant Joplin's policy of failing to train its employees, as described above, Plaintiff suffered damages in the following ways, including but not limited to:

    a.     Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

    b.     Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

    c.     Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

122.     Plaintiffs are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, based on the foregoing, as to Count V of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Joplin for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, together with reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VI--- CONSPIRACY BETWEEN DEFENDANTS WATKINS AND FREEMAN HOSPITAL TO VIOLATE PLAINTIFF'S CIVIL RIGHTS BROUGHT PURSUANT TO 42 U.S.C. § 1983

123.   Plaintiff incorporates each and every allegation contained in paragraphs 1-122 above as if specifically set forth herein.

124.   Defendants Watkins and employees of Defendant Hospital conferred with one another and reached an agreement to have Plaintiff committed into Defendant Hospital in knowing and purposeful violation of Plaintiff's Fourth Amendment rights.

125.   Defendants Watkins was a police officer employed by the City of Joplin, and during all relevant times acted under color of state law.

126.   The employees of Defendant Hospital acted within the course and scope of their employment by Defendant Hospital at all relevant times.

127.   Defendants Watkins and the employees of Defendant Hospital were both aware that there was no independent evidence to demonstrate that Plaintiff was a danger to himself or others and that there was no lawful, legitimate or reasonable purpose for having Plaintiff committed involuntarily into a mental health unit, but knew that Plaintiff had been charged with resisting arrest.

128.   In furtherance of the agreement between Defendants Watkins and Defendant Hospital, employees of Defendant Hospital authorized Plaintiff's involuntary commitment into Defendant Hospital.

129.   Upon committing Plaintiff into the hospital, Defendant Hospital's employees were aware that Plaintiff would be charged medical and hospital fees for the time that he was involuntarily committed into the hospital.

130. Defendants Hospital's and Watkins' actions, in depriving Plaintiff of his Fourth Amendment rights, were intentional, willful, wanton, and displayed a deliberate, reckless and callous indifference to Plaintiff's federally protected rights such that Plaintiff is entitled to an award of punitive damages.

131. Plaintiff's Fourth Amendment right to be free from unreasonable searches, seizures, detainments and arrests was clearly established at all relevant times.

132. Defendants Hospital and Watkins were aware of Plaintiff's right to be free from unreasonable searches, seizures, detainments and arrests and acted with deliberate indifference to Plaintiff's rights by their violation of them.

133. As a direct and proximate result of Defendants Hospital's and Watkin's conspiracy, described above, to violate Plaintiff's known Constitutional rights, Plaintiff suffered damages in the following ways, including, but not limited to:

a. Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

b. Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

c. Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

134. Plaintiff is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, based on the foregoing, as to Count VI of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendants Hospital and Watkins for damages in an amount in excess of the minimum jurisdictional limits of this Court,

for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, together with reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VII--- FALSE IMPRISONMENT/FALSE ARREST BY DEFENDANT'S WATKINS, FEKEN AND DODSON

135.    Plaintiff incorporates each and every allegation contained in paragraphs 1-134 above as if specifically set forth herein.

136.    Defendants Watkins, Feken, and Dodson detained Plaintiff in his hotel room against his will despite his repeated requests that they leave his room.

137.    Defendants Watkins, Feken and Dodson arrested and transported Plaintiff to Defendant Hospital against his will despite not being aware of any independent evidence indicating that Plaintiff was a danger to himself or others.

138.    The actions taken by Defendants Watkins, Feken and Dodson were unlawful and without probable cause.

139.    The actions taken by Defendants Watkins, Feken and Dodson were done maliciously and in bad faith.

140.    The actions taken by Defendants Watkins, Feken and Dodson displayed a complete indifference and conscious disregard for Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages.

141.    As a direct and proximate result of Defendants Watkins, Feken and Dodson's false imprisonment and false arrest of Plaintiff, Plaintiff suffered damages in the following ways, including, but not limited to:

      a.       Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

      b.       Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

      c.       Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

WHEREFORE, based on the foregoing, as to Count VII of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendants Watkins, Feken and Dodson for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT VIII--- NEGLIGENCE COMMITTED BY DEFENDANT'S WATKINS, FEKEN AND DODSON

142.    Plaintiff incorporates each and every allegation contained in paragraphs 1-141 above as if specifically set forth herein.

143.    Defendants Watkins, Feken and Dodson owed Plaintiff a duty to refrain from infringing upon his Constitutional rights in their interactions with him.

144.    Defendants breached their duty to Plaintiff by unlawfully engaging in the following acts, including, but not limited to:

      a.       Forcing their way into his hotel room without his permission;

b.　　Remaining in his hotel room after he repeatedly asked them to leave;

c.　　 Searching Plaintiff's hotel room and bags without permission;

d.　　Detaining and arresting Plaintiff without a warrant, probable cause, or any independent evidence that he was a danger to himself or others;

e.　　Using excessive force to detain and arrest Plaintiff by repeatedly deploying tasers against him even though Plaintiff was not a physical threat to Defendants and attempted compliance with their orders.

145.　　Defendants breach of their duty to Plaintiff arose to the level of recklessness, maliciousness and gross negligence.

146.　　The actions taken by Defendants Watkins, Feken and Dodson displayed a complete indifference and disregard for Plaintiff's rights such that   Plaintiff        is entitled to an award of punitive damages.

147.　　As a direct and proximate result of Defendants Watkins, Feken and Dodson's breaches of their duty to Plaintiff, Plaintiff suffered damages in the following ways, including, but not limited to:

a.　　Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

b.　　Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

c.　　Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

WHEREFORE, based on the foregoing, as to Count VIII of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendants Watkins, Feken and Dodson for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT IX--- ASSAULT AND BATTERY COMMITTED BY DEFENDANT'S WATKINS AND FEKEN

148.    Plaintiff incorporates each and every allegation contained in paragraphs 1-147 above as if specifically set forth herein.

149.    By repeatedly applying the taser against Plaintiff, Defendants Watkins and Feken engaged in an intentional offensive bodily contact against him.

150.    The actions taken by Defendants Watkins and Feken were done maliciously and in bad faith.

151.    The actions taken by Defendants Watkins and Feken displayed a complete indifference and conscious disregard for Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages.

152.    As a direct and proximate result of the assault and battery committed against him, Plaintiff suffered damages in the following ways, including, but not limited to:

      a.    Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

b.      Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

c.      Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

WHEREFORE, based on the foregoing, as to Count IX of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendants Watkins and Feken for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT X--- FALSE IMPRISONMENT BY DEFENDANT HOSPITAL

153.    Plaintiff incorporates each and every allegation contained in paragraphs 1-152 above as if specifically set forth herein.

154.    Defendant Hospital, through its employees who were acting within the course and scope of their employment with Defendant Hospital, detained Plaintiff by committing him into the hospital against his will despite his repeated assertions that his detainment was a mistake and despite the lack any independent evidence that he was a danger to himself or others.

155.    Defendant Hospital, through its employees who were acting within the course and scope of their employment with Defendant Hospital, held Plaintiff against his will for over 36 hours despite Plaintiff's repeated requests to be released, his repeated assertions that his detainment was a mistake, and without any independent evidence that he was a danger to himself or others.

156.     Defendant Hospital's actions, taken through its employees who were acting within the course and scope of their employment with Defendant Hospital, were unlawful in that there was no reasonable cause to believe that Plaintiff was a danger to himself or others.

157.     The actions taken by Defendant Hospital, through its employees who were acting within the course and scope of their employment with Defendant Hospital, were taken intentionally, with bad faith, or arose to the level of gross negligence in that the actions taken demonstrated a conscious indifference to a professional duty.

158.     The actions taken by Defendant Hospital, through its employees who were acting within the course and scope of their employment with Defendant Hospital, displayed a complete indifference and conscious disregard for Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages.

159.     As a direct and proximate result of Defendant Hospital's false imprisonment of Plaintiff, Plaintiff suffered damages in the following ways, including, but not limited to:

a.     Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

b.     Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

c.     Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

WHEREFORE, based on the foregoing, as to Count X of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Hospital for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such

sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT XI--- BATTERY COMMITTED BY DEFENDANT HOSPITAL

160. Plaintiff incorporates each and every allegation contained in paragraphs 1-159 above as if specifically set forth herein.

161. Defendant Hospital's employees repeatedly coerced Plaintiff to take medications against his will by stating that if he refused, he would be deemed non-compliant and his illegal detainment would be lengthened.

162. By repeatedly coercing Plaintiff into taking medications against his will, without explaining to him what the medications were, or what their intended effects were to be, Defendant Hospital, through its employees, who were acting within the course and scope of their employment, engaged in an intentional, offensive bodily contact against him.

163. The actions taken by Defendant Hospital, through its employees, who were acting within the course and scope of their employment, displayed a complete indifference and conscious disregard for Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages.

164. As a direct and proximate result of the battery committed against him, Plaintiff suffered damages in the following ways, including, but not limited to:

        a. Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

b.      Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

c.      Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

WHEREFORE, based on the foregoing, as to Count XI of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Hospital for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT XII--- NEGLIGENCE COMMITTED BY DEFENDANT HOSPITAL

165.    Plaintiff incorporates each and every allegation contained in paragraphs 1-164 above as if specifically set forth herein.

166.    Defendant Hospital had a duty to Plaintiff to ensure that he was not committed and held against his will without reasonable cause to believe that he was a danger to himself or others.

167.    Defendant Hospital breached its duty to Plaintiff in one or more of the following ways, including, but not limited to:

a.      Defendant Hospital's employees, acting within the scope and course of their employment with Defendant Hospital, allowed Plaintiff to be held and admitted into the hospital, and then detained him there against his will for over 36 hours without conducting an independent

investigation into the facts surrounding Plaintiff's case and without having reasonable cause to believe that Plaintiff was a danger to himself or others.

b.      Either implementing a policy that allowed its employees to commit and hold Plaintiff against his will based solely on the request of the police and without conducting timely independent investigations to determine whether there was reasonable cause to believe that Plaintiff was a danger to himself or others or by failing to train its employees regarding policies that were in place to protect Plaintiff's rights.

c.      Negligently supervising its employees and failing to ensure that they respected Plaintiff's rights despite the fact that Plaintiff's rights, as described above, were being violated on the premises of the hospital and Defendant knew or should have known that they had the ability to, and of the necessity to, ensure that its employees did not violate Plaintiff's rights.

168.    The negligent actions and omissions by Defendant Hospital, some of which were taken by and through its employees who were acting within the course and scope of their employment with Defendant Hospital, were either taken in bad faith or arose to the level of gross negligence in that the actions taken demonstrated a conscious indifference to a professional duty.

169.    The negligent actions and omissions by Defendant Hospital, some of which were taken by and  through its employees who were acting within the course and scope of their employment with Defendant Hospital, displayed a complete indifference and conscious disregard for Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages.

170.    As a direct and proximate result of Defendant Hospital's negligence, Plaintiff suffered damages in the following ways, including, but not limited to:

a.      Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

b.      Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

c.      Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

WHEREFORE, based on the foregoing, as to Count XII of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendant Hospital for damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT XIII--- NEGLIGENCE COMMITTED BY DEFENDANT BRANNAN AND DEFENDANT HOSPITAL

171.    Plaintiff incorporates each and every allegation contained in paragraphs 1-170 above as if specifically set forth herein.

172.    At all times relevant Defendant Brannan was the Mental Health Coordinator for Freeman Hospital and acted within the scope and course of his employment with Defendant Hospital.

173.    Defendant Brannan had a duty to Plaintiff to conduct personal observations or investigations into the allegations that Plaintiff was a serious harm to himself or others before filing an application with the probate court to hold Plaintiff against his will.

174.    Defendant Brannan breached his duty to Plaintiff by failing to conduct personal observations or investigations into the allegations that Plaintiff was suicidal before filing an application with the probate court to hold Plaintiff against his will.

175.    The negligent actions and omissions by Defendant Brannan, performed within the course and scope of his employment with Defendant Hospital, were either taken in bad faith or arose to the level of gross negligence in that the actions taken demonstrated a conscious indifference to a professional duty.

176.    The negligent actions and omissions by Defendant Brannan, performed within the course and scope of his employment with Defendant Hospital, displayed a complete indifference and conscious disregard for Plaintiff's rights such that Plaintiff is entitled to an award of punitive damages.

177.    As a direct and proximate result of Defendant Brannan's negligence (and Defendant Hospital's negligence), Plaintiff suffered damages in the following ways, including, but not limited to:

      a.      Damages suffered in the form of past, present, and future physical, psychological and emotional pain and suffering, mental anguish and loss of enjoyment of life;

      b.      Damages suffered in the form of medical and hospital expenses related to Plaintiff's unlawful commitment in a mental health facility.

      c.      Damages suffered as a result of Defendant's deprivations of Plaintiff's Constitutional rights.

WHEREFORE, based on the foregoing, as to Count XIII of this Complaint, Plaintiff prays that the Court enter judgment in his favor and against Defendants Hospital and Brannan for

damages in an amount in excess of the minimum jurisdictional limits of this Court, for actual damages in such sum as will adequately compensate him for damages sustained, punitive damages in such sum as will serve to punish Defendants and deter others from similar conduct, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a jury trial.

Respectfully submitted,

BAIRD, LIGHTNER, MILLSAP & HARPOOL, P.C.

BY:      /s/ M. Douglas Harpool
       M. Douglas Harpool  Mo. Bar No. 28702
       Philip R. Quinn      Mo. Bar No. 63180
       1901-C South Ventura
       Springfield, Missouri 65804
       Telephone: (417) 887-0133
       Fax: (417) 887-8740